## AMERICAN WAY SERVICE CORPORATION v COMMISSIONER OF INSURANCE

Docket No. 55560. Submitted August 20, 1981, at Detroit.—Decided February 18, 1982. Leave to appeal denied, 413 Mich 892.

The Insurance Bureau found American Way Service Corporation, American Way Life Insurance Company, a Michigan corporation, American Way Life Insurance Company, an Arizona corporation, and Thomas A. Warmus in violation of the Insurance Code for making false and derogatory statements concerning the financial condition of a competitor and for discriminating against persons because of age in the sale of credit life insurance, fined them and ordered them to refrain from issuing or soliciting new credit life insurance group contracts for six months. The corporations and Warmus appealed to the Oakland Circuit Court, which affirmed, Steven N. Andrews, J. Appellants appealed. *Held:*

1. All but two issues were waived by the failure to raise them in the circuit court. The Court of Appeals did examine them in order to insure that no miscarriage of justice would occur from failure to pass on them.

2. The Insurance Bureau drew a fair inference that some people between 55 and 64 years of age were not offered insurance or would have been denied it had they asked to purchase it from the fact that appellants had 190 agreements with automobile dealers to pay them more than the usual commission if they agreed not to sell credit life insurance to persons over a certain age.

3. The penalties imposed by the Insurance Bureau were not an abuse of discretion for the reason that appellants were unaware that it was a violation to discriminate because of age. A person engaged in business is presumed to know the law as it

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 545.

[2] 2 Am Jur 2d, Administrative Law § 621.

[3] 29 Am Jur 2d, Evidence § 222.

[4] 58 Am Jur 2d, New Trial § 160.

[5] 1 Am Jur 2d, Administrative Law § 148.

[6] 16A Am Jur 2d, Constitutional Law §§ 505, 507.

relates to that business. The penalties were within the statutory maximum.

4. Negligence or incompetence of counsel is not grounds for a new trial in a civil action.

5. The statute prohibiting age discrimination in the sale of insurance is reasonably precise and not violative of due process.

6. The overbreadth doctrine under the First Amendment does not apply to commercial advertising speech.

Affirmed.

1. APPEAL — PRESERVING QUESTION.

The Court of Appeals will not review issues that were not raised and decided by the trial court except where a miscarriage of justice would result from a failure to pass upon them.

2. ADMINISTRATIVE LAW — SUBSTANTIAL EVIDENCE — APPEAL.

A reviewing court, in determining whether an administrative agency decision is supported by "substantial evidence", must conduct a thorough review of the administrative decision which considers the whole record; such a review does not attain the status of *de novo* review but does entail a degree of qualitative and quantitative evaluation of the evidence considered by the agency and the courts must accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding.

3. COMMERCE — PRESUMPTIONS.

One engaged in business is presumed to know the law as it pertains to that business.

4. NEW TRIAL — INCOMPETENCE OF COUNSEL.

Negligence or incompetence of counsel is not grounds for a new trial in a civil action.

5. ADMINISTRATIVE LAW — DUE PROCESS.

The existence of reasonably precise standards to be utilized by administrative agencies in the performance of delegated legislative tasks is a basic due process requirement; these standards must be as reasonably precise as the subject matter requires or permits.

6. CONSTITUTIONAL LAW — FREEDOM OF SPEECH — OVERBREADTH DOCTRINE.

The overbreadth doctrine under the First Amendment does not apply to commercial advertising speech (US Const, Am I).

*William Pultusker,* for appellants.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Louis J. Porter,* Assistant Attorney General, for the Commissioner of Insurance.

*Nine & Maister,* for Dealers Financial Service, Inc.

Before: J. H. GILLIS, P.J., and T. M. BURNS and N. J. KAUFMAN, JJ.

T. M. BURNS, J. Appellants appeal as of right a lower court judgment upholding a July 7, 1980, order of the Insurance Bureau of the Michigan Department of Commerce finding them in violation of the provisions of MCL 500.2009; MSA 24.12009, and MCL 500.2027; MSA 24.12027. The Insurance Bureau ordered them to pay a penalty of $15,000 for their violation of § 2009 and a penalty of $25,000 for their violation of § 2027. Further, they were ordered to refrain from issuing any new credit life insurance group contracts and from soliciting any new group credit life insurance contracts for a period of six months.

Appellant Thomas M. Warmus is the sole shareholder and president of appellant American Way Service Corporation (Service), which is the majority shareholder of American Way Life Insurance Company (Life). Warmus is also the president of Life.

Life is in the business of offering credit life insurance to automobile dealers who in turn sell the insurance to their customers. For each policy of credit life insurance sold, the dealer receives a commission of 35% of the cost of the policy. The commissions are paid by Life to dealer-related

agencies, of which the participating dealers are members, rather than directly to the dealers who are not eligible to receive commissions because they are not licensed insurance agents. Appellant Service, which the bureau found to have an identity so inextricably intertwined with that of Life and Warmus to make its actions attributable to the others, offers a bonus arrangement to dealers that gives them added incentives to sell Life's policies of insurance. Under these "service allowance agreements" between Service and various automobile dealers, the dealers were paid a bonus by Service over and above the 35% commission they would otherwise be entitled to pursuant to the terms of the basic contract with appellant Life. However, in order to be entitled to this bonus, the dealers had to agree to limit their sales of credit life insurance policies to persons who were under a certain age. The amount of the bonus varied depending upon the age cap to which the dealer agreed. That is, dealers who agreed not to sell insurance policies to persons over age 55 were entitled to a greater bonus than dealers who agreed not to sell such policies to persons over age 60. In all, 190 such agreements were entered into with various age caps between ages 55 and 64.

Evidence introduced at the hearing below also established that appellants had made statements that were false, maliciously critical and derogatory as to the financial condition of Dealers Financial Service, Inc., a competitor of appellant Life, and that the statements were calculated to injure Dealers Financial.

On June 28, 1979, the Insurance Bureau issued a notice of hearing charging appellants with multiple violations of § 2009 and § 2027 of the Insurance Code of 1956, MCL 500.100 *et seq.;* MSA 24.1100 *et*

*seq.* the charges were based upon complaints received by the Insurance Bureau from Dealers Financial. Following a hearing that was held on several dates between September 20, 1979, and February 5, 1980, a hearing officer of the Insurance Bureau issued a proposed decision on February 11, 1980, in which he found appellants in violation of § 2009 and § 2027 of the Insurance Code. The hearing officer recommended that the Insurance Bureau issue a cease and desist order for violations of § 2027 and recommended that a penalty of $25,000 be imposed on appellants with $20,000 thereof being suspended if they began offering insurance to persons between the ages of 55 and 64 within 30 days after the order.

On July 7, 1980, the Insurance Bureau issued a final order. The bureau affirmed the findings of the hearing officer. Further, the bureau imposed a penalty of $15,000 on appellants for their violation of § 2009 and a penalty of $25,000 for their violation of § 2027. The Insurance Bureau ordered American Way to cease and desist from making false, maliciously critical or derogatory statements regarding the financial condition of Dealers Financial and to cease and desist from discriminating against individuals between the ages of 55 and 64 in offering credit life insurance. Finally, the bureau enjoined appellants from issuing any credit insurance group contracts and from directly or indirectly soliciting any new group credit insurance contracts for a period of six months. On October 27, 1980, the circuit court entered an order affirming the decision of the Insurance Bureau. Appellants now appeal and we affirm.

Appellants raise a number of issues in this appeal, however, all but two of them have been waived on account of their failure to raise them

below in the circuit court. This Court will not review issues that were not raised and decided by the trial court. *Felters Co v Local 318, Amalgamated Clothing & Textile Workers Union, AFL-CIO,* 108 Mich App 333; 310 NW2d 233 (1981), *Scanlon v Western Fire Ins Co,* 4 Mich App 234; 144 NW2d 677 (1966), *Detroit v Burke Rental Service, Inc,* 3 Mich App 353; 142 NW2d 473 (1966).

Although appellants have waived the following issues, we have examined them in order to insure that a miscarriage of justice will not occur by our failure to pass upon them.

The first issue waived by appellants concerned whether the findings of the Insurance Bureau hearing officer regarding appellants' violation of § 2027 are supported by competent, material and substantial evidence on the whole record.

Section 2027 of the Insurance Code took effect on April 1, 1977. In pertinent part, it provides:

"Unfair methods of competition and unfair or deceptive acts or practices in the business of insurance include:

"(a) Refusing to insure, or refusing to continue to insure, or limiting the amount of coverage available to an individual or risk because of any of the following:

\* \* \*

"(ii) The residence, age, handicap, or lawful occupation of the individual or the location of the risk, unless there is a reasonable relationship between the residence, age, handicap, or lawful occupation of the individual or the location of the risk and the extent of the risk or the coverage issued or to be issued, but subject to subparagraph (iii). This section shall not prohibit an insurer from specializing in or limiting its transactions of insurance to certain occupational groups, types, or risks as approved by the commissioner of insurance. The commissioner shall approve the specialization for an insurer licensed to do business in this state and

whose articles of incorporation contained a provision on July 1, 1976, requiring that specialization."

In *St Joseph Twp v State Boundary Comm,* 101 Mich App 407, 411; 300 NW2d 578 (1980), this Court found that the term "substantial evidence" has been construed by the Supreme Court to be:

"[A] thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. Cognizant of these concerns, the courts must walk the tightrope of duty which requires judges to provide the prescribed meaningful review." (Quoting *Mich Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 [1974].)

Appellants contend that in order to prove a violation of § 2027, appellees were obligated to present direct evidence establishing that individuals between the ages of 55 and 64 who purchased automobiles were refused insurance coverage. With respect to this argument, the Insurance Bureau found:

"Where American Way has entered into 190 of these agreements to pay automobile dealers more if they agree not to sell to persons over a specified age, it is a fair inference that most, if not all, of the automobile dealers basically adhere to the agreement. While the

precise number of debtors who have been refused insurance pursuant to any particular agreement has not, and possibly could not, be ascertained, it may be fairly inferred that, during any six-month period in which such an agreement is in effect, several individuals would not be offered the insurance or would be denied the insurance if they asked to purchase it."

This inference of the Insurance Bureau is a reasonable one fully supported by evidence consisting in part of the minutes of a sales meeting conducted by appellant Service in 1972, by a tape recording of a sales meeting in the .fall of 1976 that contained instructions given to a new trainee-agent of Service, and by the testimony of Nancy Brohn, an employee of Service from October, 1975, to May, 1977. The fact that this evidence consisted of events that occurred prior to the effective date of § 2027 did not make it inadmissible for, as the Insurance Bureau properly found, this evidence and testimony was probative of appellants' motivation and intent and thus admissible under MRE 404(b). It is apparent from the record that they were engaged in a continuing course of conduct designed to prevent automobile dealers from offering credit life insurance to individuals between the ages of 55 and 64 and that appellants' actions did constitute a "refusal to insure" within the meaning of § 2027.

The second issue waived by appellants concerns whether there is competent, material and substantial evidence on the whole record to support the finding of the hearing officer that they violated § 2009 of the Insurance Code. Appellants did not raise this issue below. Nonetheless, we have examined the record and find that there is no merit to their present claims.

Section 2009 of the Insurance Code, MCL 500.2009; MSA 24.12009 provides:

"Unfair methods of competition and unfair or deceptive acts on practices in the business of insurance include the making, publishing, disseminating, or circulating, directly or indirectly, or aiding, abetting, or encouraging the making, publishing, disseminating, or circulating of an oral or written statement or a pamphlet, circular, article, or literature which is false, or maliciously critical of, or derogatory to the financial condition of a person engaged in the business of insurance, and which is calculated to injure a person engaged in the business of insurance."

After reviewing evidence presented at the administrative hearing, the Insurance Bureau affirmed the finding of its hearing officer that statements made by agents of appellant Service to various automobile dealers were in violation of § 2009:

"Respondent Warmus and other American Way representatives were aware that statements that their competitor, Dealers Financial, was going broke would alarm automobile dealers and possibly cause them to cease doing business with Dealers Financial. Although Mr. Gorey wasn't impressed by these tactics, some of the other car dealers were. Mr. George Fetsco, one car dealer, went to see the attorney for Dealers Financial to ascertain the truth of the matter. * * * As indicated above, Mr. Mielnicki actually changed from Dealers Financial to American Way as a result of statements made by American Way's representative.

"Section 2009 recognizes that financial stability is a critical and sensitive issue in the insurance business and affords those who transact insurance protection from false, maliciously critical, and derogatory statements which are calculated to injure a person engaged in the business of insurance. The false, derogatory, and critical statements by American Way respecting the

financial condition of Dealers Financial were calculated to take away business from Dealers Financial and thus were calculated to injure Dealers Financial."

It is readily apparent from the record that the bureau's finding that appellants had violated § 2009 is supported by competent, material and substantial evidence. At the bureau hearing, the depositions of six automobile dealers were read into evidence. All six had been customers of Dealers Financial, appellants major competitor in Michigan, in 1978. Each of the dealers testified that he had been approached by an agent of appellants. One dealer was told that Dealers Financial was going broke and several others were told that Dealers Financial was in poor financial condition. Agents of appellants intimated to these dealers that Dealers Financial was not in a secure financial position and compared it to another insurance agency, Central State Insurance Agency, that had gone bankrupt. Appellants introduced no evidence tending to demonstrate that Dealers Financial was, in fact, insolvent or that its assets were not fiscally sound. Thus, it appears from the record that the statements of appellants' agents were indeed false and derogatory and were calculated to injure Dealers Financial. Therefore, the finding of the Insurance Bureau that appellants had violated § 2009 is supported by competent, material and substantial evidence on the whole record.

The third issue waived by appellants concerns whether the penalties imposed on them by the Insurance Bureau resulted in an abuse of discretion.

Section 2038(1) of the Insurance Code, MCL 500.2038(1); MSA 24.12038(1), sets forth the sanc-

tions that the Insurance Bureau is empowered to impose for violations of § 2009 and § 2027:

"(a) Payment of a monetary penalty of not more than $500.00 for each violation but not to exceed an aggregate penalty of $5,000.00, unless the person knew or reasonably should have known he was in violation of this chapter, in which case the penalty shall not be more than $2,500.00 for each violation and shall not exceed an aggregate penalty of $25,000.00 for all violations committed in a 6-month period.

"(b) Suspension or revocation of the person's license or certificate of authority if the person knowingly and persistently violated a provision of this chapter.

"(c) Refund of any overcharges."

The Insurance Bureau found that appellants had made intentionally false and derogatory comments regarding Dealers Financial to at least six automobile dealers. Thus, it imposed a penalty of $15,000 on them, $2,500 for each of the six violations of § 2009. With respect to § 2027, the bureau found that appellants had entered into at least 99 agreements in which it attempted to limit the age of its insureds in violation of § 2027. Therefore, the bureau imposed the maximum penalty of $25,000 for these 99 violations of § 2027.

We summarily reject appellants' contention that the penalties imposed by the Insurance Bureau resulted in an abuse of discretion because they were unaware of the fact that § 2027 had been enacted. One engaged in business in this state is presumed to know the law as it relates to the operation of that business. *Atlantic Municipal Corp v Auditor General,* 304 Mich 616; 8 NW2d 659 (1943). Nor does the fact that the Insurance Bureau may have imposed a different penalty upon another insurance company for violation of § 2027 establish that the bureau abused its discre-

tion in this case. The maximum penalty for a single violation of § 2027 is $2,500. In this case, appellants were found to have violated the provisions of that statute at least 99 times whereas the other insurance company that it compares itself to was found to have engaged in only a single violation of this statute. Nor does the fact that the Insurance Bureau adopted in substantial part the recommendation of Dealers Financial with respect to the penalties that it imposed establish that the bureau's judgment was not exercised independently.

The final issue waived by appellants in this appeal concerns whether the actions of their attorney denied them due process of law. At a February 5, 1980, Insurance Bureau hearing in this case, appellants' attorney engaged in conduct that was so improper that it required the hearing officer to close the proofs prior to the completion of appellants' proofs. Appellants admit that the hearing officer acted properly in closing the proofs. They argue, however, that they were denied due process of law and are entitled to a new hearing.

The rule in Michigan concerning reversal of a lower court decision on account of the misconduct of a party's own attorney was stated by the Supreme Court in *Everett v Everett,* 319 Mich 475, 481-483; 29 NW2d 919 (1947):

" 'Should a new trial of a chancery matter involving title to real and personal property be granted upon the sole ground of the incompetence of plaintiffs' counsel to try the case?'

"The answer is unequivocally, 'No.'

"A new trial because of incompetence of counsel has seldom been granted except occasionally in criminal cases. See note 45 Mich L Rev, p 1049. The general rule is that in civil cases incompetence of counsel is not a

sufficient reason for granting a new trial. The law is stated in 39 Am Jur, New Trial, § 152, p 159, as follows:

" 'In civil cases the rule is practically universal that a new trial will not be granted on the ground of the negligence or incompetence of the attorney for the party applying for such new trial. The law regards the neglect of an attorney as the client's own neglect and will give no relief from the consequences thereof.'

\* \* \*

" '\* \* \* Were courts authorized to disturb judgments because of the neglect and unskillfulness of attorneys appearing in the cases, the character of these adjudications of the courts for stability would be wonderfully impaired. It would frequently occur that a judgment would not be regarded as settling the rights of the parties, until the court had, in a proceeding of this character, passed upon the skill and diligence of the counsel. This would not result so often from actual negligence or want of skill of attorneys, as from the dispostiion of litigants to avail themselves of every possible avenue of escape from the consequences of defeat.' "

See also *White v Sadler,* 350 Mich 511; 87 NW2d 192 (1957), and *Novi Construction, Inc v Triangle Excavating Co,* 102 Mich App 586; 302 NW2d 244 (1980).

The conduct of appellants' attorney in this case may well have been an attempt to escape the consequences of defeat. At no time during the course of the proceedings on the day in question did appellants or their general counsel attempt to control the conduct of their attorney in spite of a clear warning given by the hearing officer that proofs would be closed unless the attorney's misconduct ceased. Further, thereafter appellants did not move to reopen proofs and, in fact, they even failed to appear for the proceedings scheduled for the next day. Under these facts then, we find that

their right to due process of law has not been violated.

Two other issues in this appeal have not been waived by appellants. The first concerns whether the Insurance Bureau's failure to promulgate rules defining the general concepts of § 2027 deprived them of due process. They contend that they were not given notice of the standard of conduct that they were expected to adhere to under § 2027.

In *State Board of Dentistry v Blumer,* 78 Mich App 679; 261 NW2d 186 (1977), this Court held that due process requires the existence of reasonably precise standards to be utilized by administrative agencies in the performance of delegated legislative tasks. The standards must be as reasonably precise as the subject matter requires or permits. *Dep't of Natural Resources v Seaman,* 396 Mich 299; 240 NW2d 206 (1976). The reason for this requirement is to insure that "individuals are not held responsible by the state for conduct they could not reasonably understand to be proscribed". *State Board of Dentistry v Blumer, supra,* 683.

In the present case, § 2027 contains clear and unambiguous language defining its proscribed conduct. The only language in that statute that does not offer specific guidance to insurers is the "reasonable relationship" exception in subparagraph (ii). However, an assistant actuary to the Insurance Bureau testified that the actual standards that determine the relationship between the risk of loss and age are well known in the industry and capable of calculation with scientific certainty. Thus, the statute does appear to be as reasonably precise as the subject matter requires.

The evidence in this case establishes that appellants engaged in an elaborate scheme designed to prevent their dealers from offering insurance to

persons between the ages of 55 and 64 while at the same time attempting to avoid giving the impression that they were refusing coverage to those in that group. The evidence demonstrates that this was not a case in which appellants have been held responsible for conduct that they did not reasonably understand to have been proscribed by § 2027.

Their knowledge of the legal status of their actions is somewhat evidenced by the fact that they were required to, and did, file a request with the bureau for rate approval. Approval of appellants' rates was premised upon calculations reflecting losses for insuring individuals within the 55- to 64-year-old age group. Because credit life insurance is offered at a uniform rate to all purchasers, rather than at an adjusted rate depending upon risk, appellants' refusal to insure individuals between the ages of 55 and 64 had the effect of requiring individuals younger than 55 to pay much higher rates than the risk they actually generated would have warranted. Because it is apparent that appellants' rate approval was premised upon the risk associated with insuring individuals between the ages of 55 and 64, their exclusion of persons in this age group clearly was not reasonably related to the risk undertaken. Thus, the record establishes that appellants were on notice that their conduct was in violation of § 2027. The bureau's failure to promulgate rules defining the precise conduct proscribed by § 2027 did not deprive appellants of due process of law.

In the final issue raised by appellants, one that they have not waived, they argue that § 2009 infringes upon their right to freedom of speech as protected by the First Amendment to the United States Constitution. They do not contend that the statute is unconstitutional in all respects. Rather,

they contend that it is overbroad in that it purports to regulate truthful speech as well as untruthful speech.

The parties concede that the speech involved in this case is commercial speech which is protected by the First Amendment. *Bates v State Bar of Arizona,* 433 US 350; 97 S Ct 2691; 53 L Ed 2d 810 (1977). However, the overbreadth doctrine has no application in cases of commercial speech of the kind involved in this case where the advertiser of a service presumably "can determine more readily than others whether his speech is truthful and protected". *Bates v State Bar of Arizona, supra,* 381. See also *Woll v Attorney General,* 409 Mich 500, 535-536; 297 NW2d 578 (1980).

The Insurance Bureau's finding that the speech involved in this case regarding the financial condition of Dealers Financial was false and calculated to take business away from Dealers Financial is supported by the evidence. Appellants offered no evidence to rebut the testimony of the six automobile dealers who testified that false information was given to them by agents of appellants regarding the financial condition of Dealers Financial. Therefore, because appellants intentionally engaged in false, commercial speech, their overbreadth challenge to § 2009 is without merit.

The October 27, 1980, lower court order affirming the July 7, 1980, order of the Insurance Bureau is affirmed. Appellees may assess costs.