# STATE OF MICHIGAN

# COURT OF APPEALS

---

JASON HOWARD and KARRIE HOWARD,

      Plaintiffs-Appellees,

v

NATIONAL CITY MORTGAGE, a/k/a PNC
MORTGAGE,

      Defendant,

and

AMERICAN SECURITY INSURANCE
COMPANY,

      Defendant-Appellant.

UNPUBLISHED
January 12, 2016

No. 323118
Genesee Circuit Court
LC No. 10-094343-CK

---

Before: MURRAY, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Plaintiffs Jason and Karrie Howard brought this action for common-law conversion and statutory conversion, MCL 600.2919a, with respect to defendant American Security Insurance Company's ("ASIC") payment of insurance proceeds for fire damage to a residential property owned by plaintiff Jason, which was subject to a mortgage held by defendant National City Mortgage, a/k/a PNC Mortgage ("PNC"). The trial court granted plaintiffs' motion for summary disposition against each defendant on the common-law conversion claim and awarded plaintiffs a judgment of $75,482.75 with regard to the common-law conversion claim.

Following a bench trial on stipulated facts, the trial court also determined that both defendants were liable for statutory conversion and awarded plaintiffs treble damages under MCL 600.2919a, resulting in a judgment for plaintiffs in the amount of $226,448.25. The court later entered a stipulated order allocating fault on a 50% basis to each defendant. The court also awarded plaintiff attorney fees of $59,829.74 pursuant to MCL 600.2919a and MCR 2.405(D)(1), requiring each defendant to pay one-half of the fees.

-1-

On appeal, defendant ASIC challenges the judgment for plaintiffs.[1] We affirm the judgment for plaintiffs with respect to their common-law conversion claim against ASIC, but reverse with respect to their statutory conversion claim, as plaintiffs failed to prove the additional element under MCL 600.2919a(1)(a) that ASIC converted property to their own use. Accordingly, we remand for further proceedings for the reallocation of fault between the defendants.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The underlying facts are not in dispute. In 2006, plaintiff Jason Howard,[2] who later married plaintiff Karrie Howard, purchased residential property in Flint and obtained a mortgage loan to finance the transaction, which was secured by a mortgage on the property.

The home was insured under a homeowner's insurance policy issued by ASIC. The policy contained a standard mortgage clause and a lender's loss payable endorsement, which granted the mortgagee priority in receiving proceeds for loss under the policy. The mortgage agreement entitled the lender to receive direct payment of insurance proceeds for property damage and gave the lender discretion to apply the proceeds toward the restoration of the property or a reduction of the mortgagor's indebtedness.

On December 11, 2008, PNC notified Howard that his loan was in default, and that PNC intended to initiate foreclosure proceedings if he did not rectify the default. On December 19, 2008, the home was substantially damaged by fire. On March 20, 2009, and March 23, 2009, ASIC issued two checks, which listed plaintiffs and PNC as co-payees. The March 20 check was in the amount of $75,069, and represented the dwelling loss payment under the policy. The March 23 check was in the amount of $413.75, and represented reimbursement under the policy's inflation guard provision. The checks were delivered to plaintiffs' agent, but plaintiffs never endorsed the checks or delivered them to PNC.

On July 22, 2009, PNC purchased the property at a foreclosure sale by placing a full credit bid of $69,399.43, the amount of Howard's indebtedness. After the foreclosure sale, PNC was unable to obtain plaintiffs' endorsement on the previously issued checks. Thus, PNC requested that ASIC reissue the joint checks, but make them only payable to PNC. ASIC agreed and sent the reissued checks directly to PNC. The reissued checks "were made payable to [PNC] for the account of Jason and Karrie Howard," but plaintiffs were not named as co-payees. PNC received and deposited the checks, and ASIC stopped payment on the original checks.

---

[1] This appeal was previously consolidated with PNC's appeals from the trial court's judgment for plaintiffs and the trial court's award of attorney fees. However, PNC filed an unopposed motion to withdraw its appeals, which we granted. *Howard v National City Mortgage*, unpublished order of the Court of Appeals, entered January 5, 2016 (Docket Nos. 323223, 325623). Accordingly, only ASIC's appeal remains.

[2] All subsequent references to "Howard" in this opinion denote plaintiff Jason Howard.

PNC applied the $75,482.75 in insurance proceeds paid by ASIC toward repairs on property, ultimately expending more than $80,000 on repairs. The property value was "essentially worthless" at the time of the foreclosure, but the property had a fair market value of $30,000 following the repairs.

Plaintiffs brought this action against defendants for common-law and statutory conversion, MCL 600.2919a. Plaintiffs asserted that they were entitled to the insurance proceeds because their debt to PNC was extinguished by PNC's full credit bid at the foreclosure sale, and that PNC and ASIC converted the insurance proceeds that were owed to plaintiffs by reissuing the checks payable only to PNC.

As explained *supra*, the trial court granted summary disposition in favor of plaintiffs with respect to the common-law conversion claim and found, following a bench trial, that PNC and ASIC both converted plaintiffs' property under MCL 600.2919a. Accordingly, the trial court entered judgments in favor of plaintiffs with regard to both claims and awarded attorney fees.

## II. GENERAL STANDARDS OF REVIEW

This Court reviews *de novo* a trial court's grant or denial of summary disposition. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). Plaintiffs' motion for summary disposition was brought under MCR 2.116(C)(9) and (10), but we will consider the motion as brought under MCR 2.116(C)(10) because the trial court considered documentary evidence in its analysis of plaintiffs' motion. See *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19, 23; 800 NW2d 93 (2010).

When reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), this Court may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11-12; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

We review the trial court's conclusions of law in a bench trial *de novo*. *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001). Issues involving the interpretation and application of statutes present questions of law, which we also review *de novo*. *LaFontaine Saline, Inc v Chrysler Group, LLC,* 496 Mich 26, 34; 852 NW2d 78 (2014).

## III. COMMON-LAW CONVERSION

ASIC first argues that the trial court erred in granting plaintiffs' motion for summary disposition with respect to their claim for common-law conversion in reliance on *Smith v Gen Mtg Corp*, 402 Mich 125; 261 NW2d 710 (1978). We disagree.

"Under the common law, conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015) (quotation marks and citation omitted). ASIC contends that it properly paid the insurance proceeds to PNC, and the insurance proceeds were not plaintiffs' personal property. In addition, ASIC contends that even if plaintiffs were entitled to the insurance proceeds, only PNC is obligated to surrender the proceeds to plaintiffs. Accordingly, ASIC asserts that it is not liable for damages arising from a conversion claim and is not required to pay the insurance proceeds again.

Contrary to ASIC's claims on appeal, we conclude that the Michigan Supreme Court's decision in *Smith*, 402 Mich 125, is dispositive of this issue, and that ASIC's claims regarding its liability for common-law conversion have no merit.

## A. APPLICATION OF *SMITH* AND ITS PROGENY

In *Smith*, the plaintiffs were the owners and mortgagors of property, and the defendants were the Federal National Mortgage Association ("FNMA") (also known as Fannie Mae) and the named mortgagee and servicing agent for FNMA. *Smith*, 402 Mich at 126. The mortgage agreement required the plaintiffs to pay for casualty insurance, "but payment in the event of loss was to be sent to the mortgagee to be applied to reduce the mortgage debt or to repair the property." *Id*. at 126-127. While the plaintiffs were in default on their mortgage loan, the home was destroyed by a fire. *Id*. at 127. The mortgage servicer initiated foreclosure proceedings. *Id*. At the subsequent foreclosure sale, FNMA placed a bid equivalent to "the amount of the outstanding debt plus foreclosure costs and attorney fees." *Id*.

Six months after the foreclosure sale, the insurance company sent a check to the mortgage servicer, which listed the servicer and the plaintiffs as co-payees. *Id*. The plaintiffs brought an action in equity to compel the mortgage servicer to endorse the check or, alternatively, an action to obtain equitable relief on the basis of unjust enrichment. *Id*. The trial court awarded approximately $14,000 of the insurance proceeds to the defendants and the remaining $4,000 to the plaintiffs. *Id*.

On appeal, the Michigan Supreme Court concluded that "when the loss occurs before a foreclosure sale in which the mortgagee purchases the property for a bid which extinguishes the mortgage debt, the mortgagee is not entitled to the insurance proceeds." *Id*. at 128. The Court quoted with approval *Whitestone S&L Ass'n v Allstate Ins Co*, 28 NY 2d 332, 336-337; 321 NYS2d 862; 270 NE2d 694 (1971), which stated:

> The theory of recovery by a mortgagee is indemnity. The risk insured against is an impairment of the mortgaged property which adversely affects the mortgagee's ability to resort to the property as a source for repayment. Where the

debt has been satisfied in full subsequent to the fire, neither reason nor precedent suggest recovery on the policy by the mortgagee.

* * *

The rule is not harsh and it is eminently practical. None disputes that the mortgagee is entitled to recover only his debt. Any surplus value belongs to others, namely, the mortgagor or subsequent lienors. Indeed, it is not conceivable that the mortgagee could recover a deficiency judgment against the mortgagor if it had bid in the full amount of the debt at foreclosure sale. To allow the mortgagee, after effectively cutting off or discouraging lower bidders, to take the property and then establish that it was worth less than the bid encourages fraud, creates uncertainty as to the mortgagor's rights, and most unfairly deprives the sale of whatever leaven comes from other bidders. [*Smith*, 402 Mich at 128-129 (quotation marks omitted).]

Accordingly, the Court concluded that "[t]he rights of the parties under the insurance policy were fixed at the time of the fire, and the mortgagee's right to the proceeds terminated when the mortgage debt was satisfied." *Id*. at 129.

Although the Supreme Court agreed with the principles in *Whitestone S&L Ass'n*, it concluded that "[s]trict application of the rule . . . would work an injustice in this case" for the following reasons: "Enforcement of this previously unannounced rule would confer an unearned benefit on the plaintiffs. The plaintiffs were compensated for the fire loss when their debt was satisfied." *Id*. at 130. Moreover, it concluded that "[i]t would be unfair to also award [the plaintiffs] the insurance proceeds when the defendants paid the amount of the debt for worthless property." *Id*. Accordingly, the Supreme Court ordered the following relief:

The foreclosure was improper and the plaintiffs should not be charged for the cost of that foreclosure. The parties should be placed in the position they would have been in had their expectations and intent been carried out. The foreclosure is set aside and title to the property is returned to the plaintiffs. Plaintiffs shall endorse the check from the insurance company now held by defendant General Mortgage. From the proceeds of that check, defendant General Mortgage shall pay $13,000 to defendant FNMA and pay the remaining $5,000 jointly to the plaintiffs. [*Id*. at 129-130.]

ASIC argues that the instant case is distinguishable from *Smith*, and that the full credit bid rule[3] has never been applied to establish a plaintiff's entitlement to insurance proceeds in the

---

[3] This Court previously explained the full credit bid rule as follows:

When a lender bids at a foreclosure sale, it is not required to pay cash, but rather is permitted to make a credit bid because any cash tendered would be returned to it. If this credit bid is equal to the unpaid principal and interest on the mortgage plus the costs of foreclosure, this is known as a "full credit bid." When a

context of an action for conversion. We reject ASIC's argument because our review of Michigan caselaw following *Smith* confirms that the full credit bid rule is applicable in this case.

In *Heritage Fed Savings Bank v Cincinnati Ins Co*, 180 Mich App 720, 722-723; 448 NW2d 39 (1989), this Court considered a case in which the plaintiff mortgagee initiated an action against the mortgagors and an insurance company after the insurer denied the mortgagee's claim for fire loss benefits following the mortgagee's purchase of the property for a price greater than the underlying debt at a foreclosure sale. On appeal, this Court held that "[a]lthough the rule in *Smith* regarding 'loss before foreclosure' was announced in the context of a mortgagee-mortgagor dispute, we conclude that it also applies to this case to extinguish the right of plaintiff to recover insurance benefits under the mortgage-loss-payable clause of the insurance policy."[4] *Id*. at 726; see also *id*. at 727. Consequently, the plaintiff's foreclosure of the property and purchase of the property for a price greater than the indebtedness satisfied the debt, terminating the mortgagee's right to the proceeds. *Id*. at 726. The Court explained that "[t]he rule [in *Smith*] is intended to prevent a mortgagee, as a creditor, from receiving a double payment." *Id*.

In *Emmons v Lake States Ins Co*, 193 Mich App 460, 461-464; 484 NW2d 712 (1992), the plaintiff mortgagor, whose home was partially destroyed by a fire, argued that it was entitled to insurance proceeds following a fire because the mortgagee's claim to the insurance proceeds, despite an assignment clause in the mortgage,[5] was extinguished when it foreclosed on the property. This Court held that the bank lost its claim to the insurance proceeds when it foreclosed on the mortgage. *Id*. at 463-465. Relying on *Smith*, 402 Mich at 128, this Court stated that, in general, "a mortgagee is not entitled to insurance proceeds when a loss occurs before a foreclosure sale in which the mortgagee purchases for a bid which extinguishes the mortgage debt." *Id*. This Court rejected the defendant's argument that *Smith* was distinguishable on the basis that the defendant bank claimed the proceeds "as an assignee, not as a mortgagee," explaining that "the bank's interest in the insurance proceeds vested at the time of the fire but expired upon satisfaction of the debt at the foreclosure sale." *Id*. at 463-464.[6] As

> mortgagee makes a full credit bid, the mortgage debt is satisfied, and the mortgage is extinguished. [*New Freedom Mortg Corp v Globe Mortg Corp*, 281 Mich App 63, 68; 761 NW2d 832 (2008) (citations omitted).]

[4] "The standard mortgage-loss-payable clause gives the proceeds to the mortgagee to the extent that they equal or are less than the mortgage indebtedness of the property," but "the mortgagor's interest in the proceeds is for the damages actually done to the insured building." *Id*. at 724.

[5] The assignment clause stated: "If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security instrument immediately prior to the acquisition." *Id*. at 464 (quotation marks omitted).

[6] The Court explained:

> The assignment was collateral security for the mortgage debt. An assignment made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose, commensurate with the debt or liability secured. This is true even though the assignment is absolute on its face. 6A CJS, Assignments, § 82, pp 730-733. After the debt secured has been paid, the right to

such, "although the assignment survived foreclosure, the debt did not," so the mortgagee no longer held a right to the assignment. *Id.* at 465. Thus, because "[t]he insurance was an alternative source of payment," "any right to the insurance proceeds was extinguished" "[o]nce the debt was paid by other means." *Id.* Likewise, "[w]hether [the mortgagee] realized the full amount of the debt on resale after foreclosure is of no relevance. The bank purchased the property for the full amount of the indebtedness. Since the debt was satisfied, any right in the bank to the insurance proceeds was extinguished." *Id.*

In *New Freedom Mtg Corp v Globe Mtg Corp*, 281 Mich App 63, 70-71; 761 NW2d 832 (2008), this Court once again reviewed the application of the full credit bid rule in cases involving insurance proceeds after *Smith*, recognizing that this Court applied the rule in *Heritage Fed Saving Bank* and *Emmons*. The Court also noted that "[t]he rule of *caveat emptor* applies with full force" to a judicial sale. *Id.* at 71 (quotation marks and citation omitted). After reviewing several other cases involving full credit bids, the Court concluded that the plaintiff, a company that originated and purchased residential mortgage loans, was not entitled to relief for its claims because it suffered no damages due to the fact that (1) it received compensation for the relevant mortgage loans by assigning them to another corporation for valuable consideration, and (2) the mortgagee who ultimately held the mortgages placed full credit bids at the foreclosure sales. *New Freedom Mtg Corp*, 281 Mich App at 74-75.

It is clear that *New Freedom Mtg Corp*, *Heritage Fed Savings Bank*, and *Emmons* consistently applied the full credit bid rule announced in *Smith*, 402 Mich 125, to bar a mortgagee's claim of entitlement to insurance proceeds or damages when the mortgagee extinguished the mortgage debt by placing a full credit bid at a foreclosure sale. ASIC does not cite, and we have not found, any Michigan authority precluding consideration of the full credit bid rule in order to determine a plaintiff's property interest in proceeds for purposes of proving conversion. Likewise, we have found no authority exempting an insurer from a claim of conversion or another theory of liability when the plaintiff insured asserts that the insurer converted insurance proceeds by paying them to the wrong party.[7]

We are not persuaded that ASIC's lack of familiarity with the full credit bid rule provides a basis for relief, because "[o]ne engaged in business in this state is presumed to know the law as it relates to the operation of that business." *American Way Serv Corp v Comm'r of Ins*, 113 Mich App 423, 433; 317 NW2d 870 (1982). Therefore, ASIC should have known that PNC's decision to satisfy plaintiffs' delinquent loan by presenting a full credit bid at the foreclosure sale would have the effect of extinguishing the mortgage and terminating PNC's entitlement to insurance benefits.

---

hold the assigned collateral ceases, and the assignee has no interest in the collateral. *Id.* [*Emmons*, 193 Mich App at 464.]

[7] Such an argument is suspect, as the Michigan Supreme Court previously recognized, "If the defendant has breached a legal duty owed to the plaintiff apart from the contract of insurance, then there may be liability in tort." *Hearn v Rickenbacker*, 428 Mich 32, 39; 400 NW2d 90 (1987).

## B. ADDITIONAL ARGUMENTS

ASIC argues that *Smith*, 402 Mich 125, does not apply here because it issued the joint checks *before* the foreclosure sale, *i.e.*, before the mortgage was extinguished. However, *after* the foreclosure, when plaintiffs' debt to PNC was deemed satisfied under the law, ASIC stopped payment on the original checks and reissued checks solely payable to PNC. The foreclosure was a significant event that altered the rights of the parties, and ASIC's issuance of checks contrary to these rights cannot be deemed appropriate based on the parties' rights *before* the foreclosure.

ASIC argues that it cannot be held liable for conversion with regard to plaintiffs when it merely issued the checks to the wrong party in a dispute between plaintiffs and PNC. ASIC emphasizes that the Supreme Court in *Smith* did not address the insurer's liability for paying the wrong party. This is correct, but ASIC was required to pay the proceeds in accordance with settled law governing the parties' entitlement to the proceeds. Cf. *Marketos v Am Employers Ins Co*, 240 Mich App 684, 691-693; 612 NW2d 848 (2000) (discussing the law applicable in cases where a mortgagee is entitled to proceeds under a standard mortgage loss-payable clause), rev'd in part on other grounds 465 Mich 407 (2001). The decision in *Smith* governs the underlying dispute over entitlement to the insurance proceeds. Again, as a casualty insurer operating in Michigan, ASIC is presumed to know the way in which Michigan law operates with regard to insurance claims on foreclosed property. *American Way Serv Corp*, 113 Mich App at 433. ASIC had a contractual duty to pay benefits in accordance with the insurance policy, see *Marketos v Am Employers Ins Co*, 240 Mich App at 691-693, which necessarily encompassed a duty to determine the insured owner's and lender's respective rights to the proceeds. If ASIC was uncertain of the parties' respective rights to the proceeds, it could have protected itself by initiating an interpleader action before reissuing the checks to PNC. See *Better Valu Homes, Inc v Preferred Mut Ins Co*, 60 Mich App 315, 319-320; 230 NW2d 412 (1975).

Additionally, ASIC argues that this Court should follow the Supreme Court's decision in *Smith*, 402 Mich 125, by declining to apply the full credit bid rule in plaintiffs' favor in the interest of avoiding an injustice to both defendants in this case. As noted *supra*, the Supreme Court in *Smith* held that enforcing the full credit bid rule would be unjust to the mortgagee because the rule was not previously adopted in Michigan, and the mortgagee did not have notice that its tender of a full credit bid would extinguish its right to insurance proceeds. *Id*. at 129-130. In this case, however, ASIC cannot argue lack of notice that the full credit bid rule is firmly established in Michigan law. Although the *Smith* Court also noted that "[i]t would be unfair to also award [the plaintiffs] the insurance proceeds when the defendants paid the amount of the debt for worthless property," *id*. at 130, we do not find that this statement requires such a result in this case given the strict application of the full credit bid rule in subsequent cases.

For these reasons, we affirm the trial court's judgment for plaintiffs with respect to their claim for common-law conversion against ASIC.

## IV. STATUTORY CONVERSION

ASIC next argues that plaintiffs failed to prove the additional elements necessary to prove statutory conversion under MCL 600.2919a. We agree.

Unlike common-law conversion, statutory conversion is governed by MCL 600.2919a(1), which provides:

> A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.[8]

In *Aroma Wines & Equip*, the Michigan Supreme Court examined the scope of Michigan's common law rules regarding conversion, 497 Mich at 348-353, and observed that "Michigan law's understanding of conversion shifted away from requiring an additional showing that the conversion occurred for the other person's 'own use' and toward allowing a property owner to recover for any act of dominion inconsistent with that person's rights in that property," *id*. at 354. Thus, "[b]y enacting MCL 600.2919a, the Legislature intended to create a separate statutory cause of action for conversion 'in addition to any other right or remedy' a victim of conversion could obtain at common law." *Id*. at 340 (footnote omitted). The Court concluded that "the Legislature's inclusion of the phrase 'to the other person's own use' in § 2919a(1)(a) indicates its intent to limit § 2919a(1)(a) to a subset of common-law conversions in which the common-law conversion was to the other person's 'own use.' " *Id*. at 355, quoting MCL 600.2919a(1)(a). Therefore, in order to be entitled to statutory treble damages in this case, plaintiffs were required to prove that ASIC converted the property to its "own use," meaning that ASIC "employed the converted property for some purpose personal to [ASIC's] interests, even if that purpose is not the object's ordinarily intended purpose." *Id*. at 340.

Here, the stipulated facts demonstrate that ASIC exercised dominion over the insurance proceeds contrary to plaintiffs' rights by delivering the proceeds to PNC without plaintiffs' authorization, which constituted common-law conversion. *Dep't of Agriculture v Appletree Marketing, LLC*, 485 Mich 1, 14; 779 NW2d 237 (2010) ("Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party."). However, we cannot conclude that ASIC

---

[8] As indicated in the trial court's judgment, plaintiff's conversion claim against ASIC falls under MCL 600.2919a(1)(a), not MCL 600.2919a(1)(b), because it arises from ASIC's *own payment* of the insurance proceeds to the wrong party in the discharge of its policy obligations, not the "buying, receiving, possessing, concealing, or aiding in the concealment of [already] stolen, embezzled, or converted property." Accordingly, we will not consider the parties' arguments regarding whether ASIC meets the knowledge requirement under (1)(b).

converted the insurance proceeds for a purpose personal to its own interests. *Aroma Wines & Equip*, 497 Mich at 340.

We disagree with plaintiffs' argument that ASIC converted the proceeds for its own use because it paid the proceeds to PNC for the purpose of discharging its obligation to plaintiffs under the insurance policy. Payment of an insured's valid claim of loss in accordance with an insurance policy was ASIC's obligation and legal detriment under the policy. It was not a benefit that ASIC bargained for; instead, it was the benefit that ASIC granted to the insured in exchange for the payment of premiums. See *Citizens' Life Ins Co v Commr of Ins*, 128 Mich 85, 90-91; 87 NW 126 (1901) (defining an insurance contract); cf. *Hess v Cannon Twp*, 265 Mich App 582, 592; 696 NW2d 742 (2005) (describing the elements of a contract); *Hall v Small*, 267 Mich App 330, 334-335; 705 NW2d 741 (2005) (discussing the role of consideration and mutuality of obligation in contracts). Moreover, ASIC's only interest in the transaction was to distribute proceeds under the policy to the correct payee. It neither had an interest in whether the correct payee was plaintiffs, PNC, or both, nor did it gain an advantage in providing the funds to one of the parties instead of the other. Cf. *Aroma Wines & Equip*, 497 Mich at 360-361 (describing a situation when the defendant may have converted wine "for its own use" when it moved the plaintiff's wine in order to accomplish its own purpose in the space where the wine was previously stored or to acquire leverage against the plaintiff). Therefore, ASIC was not converting the funds for its own use or benefit when it provided the proceeds to PNC.

Because the stipulated facts failed to demonstrate that ASIC converted the insurance proceeds for its own use, the trial court erred as a matter of law in finding that ASIC was liable to plaintiffs for statutory conversion. Thus, we reverse the trial court's judgment for plaintiffs against ASIC with respect to plaintiffs' statutory conversion claim.

Given this conclusion, ASIC is not liable for treble damages or attorney fees under MCL 600.2919a(1)(a). Accordingly, we remand this case to the trial court for the reallocation of damages consistent with this opinion.

## V. CONCLUSION

We affirm the trial court's judgment for plaintiffs with respect to their common-law conversion claim against ASIC, but reverse the judgment against ASIC with respect to the statutory conversion claim. Because our decision affects the trial court's allocation of fault between the defendants, we remand for further proceedings.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Michael J. Riordan

-10-